**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

           Plaintiff,

v

JMYLA ELAINE SHA'TARIA WHITE,

           Defendant.

Case No: 1:23-cr-87

Honorable Jane M. Beckering

---

**DEFENDANT'S SENTENCING MEMORANDUM,**
**BRIEF IN SUPPORT OF MOTION FOR VARIANCE, AND**
**BRIEF IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE**

NOW COMES the Defendant, Jmyla White, by and through her attorney, Michael D. Hills, and offers this Sentencing Memorandum for the Court's consideration.

**INTRODUCTION**

Ms. White was 26 years old when she was brought into this conspiracy. She has very limited criminal history, just two misdemeanors when she was 18 years old. She successfully completed her misdemeanor probation and has never served a jail sentence. Ms. White has graduated high school and has some college, and a good work history. She lives in a home with her mother, her stepfather who has Alzheimer's, her aunt and her 12 year old daughter. She has struggled with depression that is described as "major depressive disorder" (PageID.1114 / Paragraph 227) and has been faithfully attending bi-weekly, co-occurring, individual counseling at Phoenix House since August 2023. (PageID.1114 / Paragraph 227)

Ms. White is very remorseful stating her behavior was shameful and she wishes she could take it all back. (PageID.1107 / Paragraph 178)

## REQUEST FOR DOWNWARD DEPARTURE
## BASED ON CRIMINAL HISTORY

In determining a downward departure based on USSG 4A1.3(b) "if reliable information indicates that the defendant's criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted". As an example of reasons for a downward departure application note (3)(A)(i) states an example when a downward departure may be warranted is when "The defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." Ms. White's criminal history has been scored as a category II on the strength of two misdemeanors when she was 18 years old.  One for a battery (6 months of probation) (PageID.1108) and the other for possession of a small amount of cannabis (fine) (PageID.1109).  These relatively minor offenses occurred 7 years prior to the start of the offense in this case, a close match to the example provided in the application note.

Another example of a reason for a downward departure is contained in application note (3)(A)(ii) which states "The defendant received criminal history points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person."  As noted above, Ms. White received a point for possession of a small amount of marihuana, pushing her into criminal history category II.

A shift from category II to category I, would shift the guidelines down from 87-108 to 78-97; likewise if the Court departed down one level the result would be a guideline range of 78-97.  If the Court does not believe a departure under USSG 4A1.3 is

appropriate, Counsel would advocate for a downward variance based in part on this analysis of criminal history.

## APPLICATION OF 18 USC §3553(a)

Under *United States v. Booker*, 543 U.S. 220 (2005), as clarified by *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), sentencing courts consider multiple factors in determining a defendant's sentence. After correctly calculating the advisory sentencing guideline range, a sentencing court should listen to arguments by the parties regarding the appropriate sentence to impose, and then turn to 18 U.S.C. § 3553(a) in light of the sentences advocated by the parties. *See Kimbrough*, 552 U.S. at 108-11. After considering the advisory guideline range, the positions of the parties, and the § 3553(a) factors, the sentencing court should impose a sentence sufficient, but not greater than necessary, to achieve the purposes of sentencing. *See id.* at 91; *see also* 18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3553(a), a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing as the section articulates them. The section calls on courts to consider a variety of sentencing factors. For the Court's convenience, Defendant will enumerate some of these factors below.

## SECTION 3553(a)(1) LOOKS TO THE
## NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of the offense are well documented and troubling. Victims' financial security was compromised and lives altered.  Ms. White recognizes this fact and has accepted responsibility for her part in the crimes committed.

It should be noted, however, that Ms. White's time in the conspiracy was limited. While the conspiracy charged spans 25 months, Ms. White was involved for only 4/5

months and voluntarily left the conspiracy before the conspiracy ended on the indictment. In the relatively short time frame Ms. White was involved, the entire conspiracy collected $3,224,549.00 in proceeds. This money was generated by the engine created and directed by the Indian system, of which Ms. White was on the bottom – a "money mule" as characterized in the presentence report. Ms. White did not generate, operate or control the system for this grift. Ms. White did not handle, see or have knowledge of anywhere near $3,224,549.00. For example, the Michigan connection that involved J.K., Ms. White never traveled to Michigan, nor did she have anything to do with J.K. or any knowledge of the Michigan fraud. Yet the money stolen from J.K. is on Ms. White's ledger.

Counsel agrees Ms. White was directly involved with about $445,000.00. (PageID.1102 / Paragraph 164), a large number to be sure, but not $3+ million. There is $2,779,549.00 difference between what Ms. White was involved with directly and what she is being held accountable for as reasonably foreseeable. In the guidelines that is a swing from +12 to +16 (USSG 2B1.1(b)(1)), a 4-point swing makes a big difference in the guidelines. With a criminal history score of II and a 4-point drop, Ms. White's guidelines would be 57-71, down from the scored guidelines of 87-108. In criminal history category I the guidelines would be 51-63.

While counsel has not objected to the amount Ms. White is being held responsible for regarding restitution and reasonably foreseeable actual loss used in calculating the guidelines, the disparity in direct involvement and what is being held as reasonably foreseeable is significant and should be considered. Ms. White is being held responsible for a number millions of dollars above what she was directly involved with. She will be on the hook for this restitution for the rest of her life; for money she did not receive or take, for money she did not organize to be taken. The magnitude of this punishment

cannot be understated and should be considered as downward pressure on the sentence ultimately handed down.

### SECTION 3553(a)(1) LOOKS TO THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Ms. White was born and raised in Florida.  She has a close relationship with and admires her mother.  The same cannot be said for Ms. White's father, James White, whom she sees infrequently and does not care for.  Fortunately for Ms. White her mom married Clarence Brown when Ms. White was 13 years old.  Mr. Brown was a father figure to Ms. White and she loves him.  Unfortunately, Mr. Brown now suffers from Alzheimer's and requires constant care from the family, including Ms. White.

When Ms. White was around 5 years old she was assaulted by her brother. Although Ms. White did not remember the incident(s) at the time, or growing up, she was hospitalized during this time for mental health related issues.  Ms. White thinks this was a cry for help.  She was eventually told about the assault when she was 16 years old and participated in counseling again.  Also when she was 16 she gave birth to her daughter Ya'riah.  The father of the child, Rayne Crume, never participated in raising his daughter and was eventually murdered.

As a young teen mother, Ms. White struggled, and did the best she could but her parental rights were taken away in 2018.  However, Ms. White did not abandon her child and continued to fight to be with her.  She continues to live with, and parent, Ya'riah while living under the same roof with Ya'riah and Patricia Ogletree, who is Ms. White's aunt and to whom Ya'riah was placed.  Ms. White has remained with, and is mom to, Ya'riah and is very proud of that fact.

There have been struggles in Ms. White's life as noted.  She was assaulted at a young age, she watched her father figure succumb to Alzheimer's, she became a mother at 16, her parental rights were taken away and most recently her brother was murdered. It is clear why there would be significant depression.

However, through it all Ms. White has maintained a positive attitude and kept stepping towards her goals.  She graduated high school.  She is mother to Ya'riah.  She helps takes care of her stepfather.   Ms. White has maintained employment and is especially proud of her current job.  She was fired from her previous employment because of the arrest on this case and then took a job at the local gas station/convenience store where she was elevated to shift manager, as she puts it in her letter:

> After losing that job due to the arrest and pending charges I had to settle for a gas station associate. No matter where I go or who I work for how I work will never change. In less than 6 months I was offered a promotion to shift manager.  This job was offered to me after the manager asked all the staff their opinion, they chose me. I am not a bad person. (**Exhibit A**)

Ms. White's mother and two friends have also written letters supporting Ms. White. (**Exhibits B, C, and D**)

At the time Ms. White entered the conspiracy she was significantly depressed, she had no money, she was not working; in Counsel's opinion Ms. White suffered significant trauma that had/has gone essentially untreated until this recent counseling at Phoenix. Overall Ms. White was in a dark spot when she was introduced to this conspiracy by Mr. Thibou with whom she had a relationship about 5 years prior to this conspiracy.

Since being arrested Ms. White has done what she can.  She gave a complete statement to agents, she proffered beyond that, she has taken advantage of counseling the entire time, she has lost a job and gained another, she has been promoted in her new job, she has accepted responsibility and pled guilty.

As noted, Ms. White has a significant issue with depression and probably PTSD. Ms. White deals with this issue in a number of ways, including painting.  Counsel asked for a photo of her favorite painting and she sent me a beautiful painting of a tree/water landscape.  Ms. White is talented, loved and more than the sum of this conspiracy.



### SECTIONS 3553(a)(2)(A) – (C)

Section 3553(a)(2)(A) calls for consideration of the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Ms. White is on the bottom rung of this conspiracy, she voluntarily left the conspiracy and cooperated with the authorities.  A sentence below the advisory guideline range is more than enough to promote respect for the law.  As it relates to just

7

punishment, the restitution in an amount much more that Ms. White touched should also come into play here.

Section 3553(a)(2)(B) points out the need to afford adequate deterrence to criminal conduct.

When the Court reflects on this sentencing factor, Counsel would invite the Court to consider a couple of points in particular.  First, an individual in Ms. White's position, pre-entry into the conspiracy, a very young woman with a minor misdemeanor criminal history and never serving jail time.  Any amount of incarceration is an extreme deterrent.  Second, the restitution amount.  It's an amount that is truly life altering.  A sentence below the guidelines, combined with the restitution amount will serve more than adequate deterrence to this conduct.

Section 3553(a)(2)(C) asks courts to consider the need to protect the public from future crimes by the Defendant.

This is a significant factor that should push downward on the sentencing calculous.  Ms. White's limited criminal history suggests she will not participate in this type of behavior again.  Moreover, she voluntarily left the conspiracy – she quit March 9, 2022 (PageID.1102 / Paragraph 163).  She was arrested over a year later on July 25, 2023 (PageID.1096 / Paragraph 124).  In over 16 months she did not go back to the conspiracy.  She did not engage in any further criminal activity save a minor traffic issue that is not scored for criminal history.  There is little danger the public will need protection from Ms. White.

**CONCLUSION**

A sentence below the scored guidelines would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Ms. White's criminal history is minor, she has never been sentenced to jail before this case.  She successfully completed her only probationary period when she was 18 years old.  She was a young 26 years old when she was brought into this conspiracy.  She voluntarily left the conspiracy after 4/5 months.  Once she was arrested, over a year later, she voluntarily cooperated with agents giving them a complete statement.  While on bond Ms. White has struggled, especially as of late, but has addressed her major depression and cannabis dependency with continued counseling at Phoenix House.  She is being held financially responsible for a vast amount of money, the large majority of it she never touched or in any way controlled.

Ms. White knows what she did has altered lives and she feels shameful for her actions.  Remorse that is demonstrated by leaving the conspiracy and cooperating upon arrest.

Respectfully Submitted,

HILLS AT LAW, P.C.

Dated: May 2, 2024

Michael D. Hills (P58571)
Attorney for Defendant

BUSINESS ADDRESS:
425 South Westnedge Ave
Kalamazoo, MI 49007
269-373-5430
mhills@hillslawoffice.com

9